Good afternoon, Your Honors. Michael Kars for the Petitioner, Daniel Sanders. And I'd like to request a four-minute rebuttal, please. Pardon me? Four-minute rebuttal. All right. Try to keep track of your own four minutes. I will do that, Your Honor. First, let me take care of one preliminary matter. Supplemental authorities was filed with the Court today. I found some research, and I thought it was appropriate, especially there is a Ninth Amendment matter of appeal after trial. Yes. Okay. This is a case about credibility, and it's about credibility of the complaining witness's mother. But I think that I'd like to focus at least initially on the pretrial hearing in the State court level, and the reason being, for one, the district court admitted that if the pretrial hearing had found the hearsay comments inadmissible, there would not have been sufficient evidence to go to trial and to obtain a conviction. There were three hearsay witnesses, and in order of presentation, they were the mother, Patty Sue Kelly, the detective, Detective Folsom, and then Dr. Sterling. This took place, the critical initial discussion was with Patty Sue Kelly, the mother, and then about, over a period of time, which admittedly, at least eight hours for the full disclosure to come out. It was the next day, about four o'clock in the afternoon, I believe, that there was the interviews of the three-year-old child with Detective Folsom and Dr. Sterling. Now, in the focus of the trial court's, I wouldn't say, analysis of the Ryan factors, which were critical to determining whether or not the hearsay in the state of Washington is admissible, they were looking at basically nine factors. And I have made the argument in my paper that if further information had come before the trial court at the pretrial hearing, the hearsay would not have been admissible. And specifically, it comes to the issue of the credibility of the initial hearsay witness, Patty Sue Kelly, and the potential impact of her actions upon the testimony of her son, who was then subsequently interviewed. Evidence was presented at the district court to show various elements of Patty Sue's Kelly, and the ineffectiveness of trial counsel by not interviewing or calling as witnesses certain individuals who Patty Sue Kelly had related the story as allegedly told to her by the young man. And in particularly, I draw this court's attention to two names in particular who did not know Patty Sue Kelly before this whole episode. That would be Patrick Dixon of the Department of Social and Health Services, and Officer Denham, I believe, of the Clark County Sheriff's Department. Now, in the statements by Patty Sue Kelly to these two individuals, we have, very interestingly, elements that go right to the trial court's discussion of the admissibility of the statements. For example, the use of the word pee-pee versus penis. Now, that in and of itself may not seem all that much, but there seems to be, for example, in the subsequent testimony to Dr. Sterling and Detective Folsom, there was every language and every word that Tyler used to describe, allegedly describe the events of that day, used the word penis. And yet, she specifically used, and it was documented, that the word that she described that Tyler said to her, to these two individuals, was pee-pee. Now, we cannot expect a trial court to be prescient. That would be absurd. But we can expect, when this documentation is part of the discovery package, that these people, with this very important critical information, would be called to put into question the initial hearsay witness's testimony. And that is the gravament of what I'm talking about. For example, when the mother talked to Patrick Dixon, she said it happened at night. Now, one of the consistencies is that there were towels involved. When she talked to Officer Denham, it was daytime in the bathroom. Now, most of the other testimony suggests that the alleged incident occurred in the bedroom. But then, of course, subsequent statements to Cindy Taylor said otherwise. The point is, is that the trial court, when it was looking at just the three witnesses alone, just looked at them. And it did not have enough information to adequately address the question of whether or not the statements were consistent. And that really is the problem here, because if the trial court had been presented testimony to show that they're basically inconsistent or that Hattie Sue Kelly is critically impeachable on her veracity. And if it had been shown that, for example, that her and my client, Mr. Sanders, had animosity, she had a propensity to make these accusations. All of these issues would have put into question some of the issues that come out in the Ryan factors, as discussed in, say, v. Swan. And that is really the initial issue. And I think it's critical because, like I said, they don't come in, there is no case. Now, even understanding that there is some similarities, then that goes to the question of a young child, three years old, susceptibility, it seems like, I mean, to me anyway, it's a distinct possibility that over a period of time there developed a story. The story was imprinted, and that came out during the subsequent interviews with Detective Folsom and Dr. Sterling. And that's the issue. That was the issue that wasn't raised. And that's the problem, because if you take a look at the transcript of the decision by the trial court judge at the pretrial hearing, you can see that there's some real, he depended heavily on what was presented, which is right, but he had no opportunity to consider any other evidence because defense counsel didn't do anything. I mean, Professor Stray testified as an expert for Mr. Sanders, and specifically made the point that at that point in the trial process, there was no downside to following up on these things, no downside whatsoever. We have two critical missing witnesses that go expressly to the veracity of Patty Sue Kelly, where were they? There are some other issues that could have been brought up at the same time regarding the fact that Patty Sue Kelly had said to Officer Denham that my client had put his penis in her mouth, in his mouth. And yet, that's nowhere else in the testimony. There's a real inconsistency, because you would think that a young child who had had that happen to them would have expressed it again, and again, and again. That raises real questions about, you know, how consistent the statements are. There's also an issue in the Rhine factors if the court gets beyond that point, which requires corroboration. Now, this is discussed in a couple of different cases. And it really, you know, in all honesty, I mean, this is an issue for that the trial courts have a fair amount of leeway, and I'd be the first to admit it, because I have to. But let us look at what the corroboration said. The corroboration said, precocious knowledge. However, the question of what was the precocious knowledge if the statements were inconsistent, that kind of raises an issue. And the court even admitted on record that as far as the corroboration, that was a tough, that was a questionable issue. But it did weigh on the side of the state, so the question then comes in, if had more evidence come in, would it have been gone? And so there's, for example, the masturbation gesture, allegedly masturbation gesture. That was allegedly made to Detective Folsom. But in Detective Folsom, the evidentiary hearing admitted that at least the hand gestures that he used could be considered leading. And so the point is, is that, where was this questioning? Three-year-old susceptibility. It's just a- I understand your point here. I mean, the testimony given by the officer to the trial judge, as I recall, reflected the conversation or the question, the discussion he had with the little boy. And that seems to me would have reflected exactly the leading nature. I'm not sure what it is that you're saying the lawyers should have been bringing out about that. Well, what I would say is this, is that, I mean, I understand, I think your point being that the judge who's obviously a trial judge would have the opportunity to see what a leading question is or not. And more than that, evaluate it. And you have a discussion with a three-year-old. The odds are pretty good there are going to be some leading questions in there. But you make an evaluation as to how reliable the responses are. And the judge is sitting there making that evaluation. I'm not sure exactly what it is you're saying the defense counsel should have done about that. Well, I think that, I mean, you know, judges need help. We all need help. And that sometimes there's things that we miss that can be brought to their attention, to our attention, that would assist us in evaluating the evidence. And so if, you know, it's not brought to the judge's attention, they may make an assumption and not see it in a light that would then be presented appropriately. But what you're saying really is that in the nature of small children, unlike maybe your average witnesses, that what's leading and what's not leading would be enhanced by an expert who could talk about that subject, which wasn't there, or there was no one to help the judge other than just your normal, you know, leading or non-leading. I mean, you made an assumption before about, well, you would assume that children would do such and such, or would testify if told just that they would do it again and again. And I know that that's not necessarily true. I know experts would tell you that wouldn't be necessarily true. So if I take your point, I think it's that you're saying there needs to be, there wasn't enough done to pinpoint the situation with this very young child as a witness. I think that is, I think that's a point well taken. I mean, the point of, you know, we did have an expert in child interview techniques at the evidentiary hearing, or actually it was a week after because he had been in the hospital. But his, that type of expert, I mean, it's a very difficult thing dealing with a three-year-old child. I mean, what's truth? What isn't truth? What's their level of veracity? What's their level of understanding? You know, as the expert brought up in his testimony, the use of the word sprinkled. Where did that come from? I mean, that's a fairly complex word for a three-year-old. These kind of questions, I mean, the word, which words they use around the house, the fact the child couldn't identify the word buttocks when shown the picture. I mean, and so yes, I do believe strongly that an expert in a situation like this would be critical. And I think that that point was well-maken by Professor Strait, who had examined the situation and put together a protocol precisely for this area. To that, and the concern I have about the professor's testimony is it seemed to me he presented not the broad range of professional competence type tests that Strickland gives us, but what should be done. And we have testimony about a protocol to be utilized in dealing with child witnesses, and that at least somebody within the county was familiar with that and used it. But that seems to me to be a far cry from testimony that establishes the broad range of professional competence, which is the standard we have to deal with here. Let me just put it in a very broad fashion. What tells us that what was done by defense counsel here is outside what, you know Strickland's language, you won't try to dig it up and waste your time. Outside that broadband, the deferential standard we're supposed to apply. Okay, can I ask a limiting question? Sure. Because, I mean, if we're talking about experts, that's one issue. If we're talking about calling witnesses. Why don't you just tell Judge Clifton the entire package of why you think this lawyer who didn't file a brief, didn't make an argument, didn't say anything, didn't call any witnesses, tell him why you think his performance is below the level of competence required under Strickland. Because there is no reason, no rational reason to not call witnesses at a pre-trial hearing to challenge child hearsay statements in a case like this. In any case, in any case, in a general way, in any case involving a child who is three years old, that is what I'm talking about. That's the crux of the question, or one of the questions, you know. The other thing is, is that one of some of the other evidence, I'm getting short on time, but I want to just point out that also, at the pre-trial hearing, there was absolutely no discussion of the DNA evidence, the missing DNA evidence on the towels. And the judge specifically drew a connection and used the stains as corroboration. And yet, as pointed out in the evidentiary hearing much more clearly, that there was no good reason for there not to be stains based upon the fact that Tyler had said that he had been washed with towels and his mom had collected the clothes and they had been transferred appropriately in a very quick fashion. I'll save the rest for you, Bob. May it please the Court. My name is Greg Rosenthal, and I'm an assistant attorney general, and I represent the Respondent, Leslie Ryder, of this matter. Mr. Sanders was not provided with ineffective assistance of counsel by his trial attorney, Tom Meducer. This Court previously remanded this matter after oral argument for an evidentiary hearing on the merits of Mr. Sanders' IAC claims. In a 27-page decision, a report and recommendation, Magistrate Judge Arnold determined that Mr. Sanders was not provided with ineffective assistance of counsel. And in a 19-page decision adopting the R&R, District Judge Bryan found that Mr. Sanders was not provided with effective assistance of counsel by
judges: Reinhardt, McKeown, Clifton